IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

PATRICIA JANE EDINGTON                                                                      PLAINTIFF

VS.                                      3:13-CV-00202-BRW

ALEXANDRA JANE EDINGTON
SAMMONS and NATHAN SAMMONS                                                    DEFENDANTS

**ORDER**

Pending is Plaintiff's Motion for Partial Summary Judgment (Doc. No. 24) and Defendant's Motion for Summary Judgment (Doc. No. 28). Responses to both motions have been filed.[1] As set out below, Plaintiff's Motion for Partial Summary Judgment (Doc. No. 24) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 28) is GRANTED in PART and DENIED in PART. Only the breach of contract claims remain.

Since Plaintiff's claim for equitable mistake is dismissed, Defendant's stated need to amend their complaint to add the defense of "unclean hands" is unnecessary, so the Motion to Amend Answer (Doc. No. 42) is DENIED.

**I.    BACKGROUND**

The allegations from both sides are verbose and confusing. Best I can tell, once you trim away the excess fat, this case is simply a dispute over two alleged oral agreements between a mother (Plaintiff Patricia Jane Edington), daughter (Defendant Alexandra Edington Sammons), and father/husband (Jerry Edington, Sr., deceased). Defendant Nathan Sammons is Alexandra Sammons's husband and Plaintiff's son-in-law. The agreements involve three different Arkansas properties: a home in Jonesboro, a home in Marion, and farmland in Jackson County.

---

[1]Doc. Nos. 33, 35.

The first alleged agreement is that Plaintiff agreed that when she sold her home in Jonesboro (where Defendants lived), the proceeds would go to Defendants. In return, Defendants agreed that when they sold the home in Marion (where Plaintiff lived off and on) the proceeds would go to Plaintiff. The second alleged agreement relates to a decision to put Plaintiff's farmland in Defendant's name, with the understanding that Plaintiff would continue to receive the rental income from the property for the remainder of her life.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[2] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[3]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should be granted only when the movant has established a right to the judgment beyond controversy.[4] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[5] A court must view the facts in the light most favorable to the party opposing the motion.[6] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

---

[2] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[4] *Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[5] *Id.* at 728.

[6] *Id.* at 727-28.

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[7]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[8]

## II.  DISCUSSION

### A.  First Agreement

On August 12, 2008, Plaintiff and her now-deceased spouse (Defendant's father) executed a Quitclaim Deed transferring the Marion home to their daughter, Defendant Alexandra Sammons.[9] However, Plaintiff and Defendant's father continued to live in the home.

Plaintiff and Defendant's father bought the Jonesboro home in 2010. The deed was in Plaintiff's name, but Defendants lived in the home. In October, 2011, Plaintiff sold the home and gave the money to Defendants, pursuant to an alleged oral agreement made at the closing. The undisputed part of the oral agreement was that Plaintiff would give Defendant the proceeds from the sale of the Jonesboro home and Defendant would repay her with proceeds from the sale

---

[7]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[8]*Anderson*, 477 U.S. at 248.

[9]In her statement of material facts not in dispute, Plaintiff claims that "only Plaintiff's name was on the title" to the Marion home." (Doc. No. 26) However, the deed attached to her response to Defendant's Motion for Summary Judgment has the names of both Plaintiff and her now-deceased spouse on the deed. Doc. No. 33-10.

3

of the Marion home. The Jonesboro home netted $132,000, and four months later, the Marion home netted $177,631.00.

In their briefing Defendants "emphatically denies that there was a contract between the parties for repayment of proceeds from the Jonesboro, Arkansas, sale" with the proceeds from the sale of the Marion home.[10] Yet, in her deposition, Defendant Alexandra Sammons testified that she and her mother agreed that once the Marion home sold, she would use the money to repay the $132,000 from the sale of the Jonesboro house, and any additional money would be used to help pay Plaintiff's living expenses.[11] So, despite Defendants' vehement denial and the contradictory post-deposition affidavit,[12] Defendant Alexandra Sammons appears to have conceded that there was, in fact, an agreement regarding the house swap. Though this was an oral agreement, it is outside the Statute of Frauds because there was full performance by Plaintiff, acceptance of the money by Defendant, and partial performance by Defendant.[13]

So the questions of fact that remain for the jury to decide are: (1) did the oral agreement require Defendants to provide Plaintiff with the additional $45,631.00 from the sale of the Marion home; and (2) has Defendant provided Plaintiff sufficient money to satisfy her end of the oral agreement.

---

[10]Doc. No. 36.

[11]Doc. No. 33-1, at 24.

[12]"I was given the proceeds of the sale by Patricia Jane Edington, but did not make an agreement to pay her the entire proceeds from a Marion, Arkansas sale." Doc. No. 35-1.

[13]*Talley v. Blackmon*, 271 Ark. 494 (Ark. App. 1980) (holding that full performance by one party in extending a loan and part performance on the part of the other party by making payments on a loan operated to take the oral agreement out of the statute of frauds).

**B.     Second Agreement**

On August 12, 2008, Plaintiff and Defendant's father executed a Quitclaim Deed transferring 300 acres of farmland in Jackson County to their daughter, Defendant Alexandra Sammons.  Some of the land was inherited from Plaintiff's parents, and some of it was purchased from her sibling's inheritance.

Plaintiff contends that the transfer was made with the understanding that she would continue to get rent money generated by the property so long as she was alive.  For several years after the transfer, the rent money was mailed to the Marion home, where Plaintiff and Defendant's father lived.  In 2011, after Defendant's father died, the rent money was mailed to Defendants' home -- it appears that Plaintiff moved out of the Marion home after the father's death.  For the next few years, Defendants gave the rent money to Plaintiff, but after a falling-out, Defendants stopped giving Plaintiff the rent money in 2013.

Factual disputes exist concerning whether there was an oral agreement that if Plaintiff deeded the farmland to Defendant, Defendant agreed to provide Plaintiff with rent checks from the farmland for the remainder of Plaintiff's life.  Defendants argue that the statute of frauds also applies to this alleged oral agreement.  Again, Arkansas courts have held that the Statute of Frauds may not apply when there is full performance by one party and part performance by another party.[14]  Here there appears to be full performance by Plaintiff -- signing the farmland over to Defendant -- and a disputed question of fact as to whether Defendant's giving the rent checks to her mother were part performance from their alleged oral agreement or simply a gift.

---

[14]*Talley v. Blackmon*, 271 Ark. 494 (Ark. App. 1980) (holding that full performance by one party in extending a loan and part performance on the part of the other party by making payments on a loan operated to take the oral agreement out of the statute of frauds).

    **C.    Other Causes of Action**

In addition to the breach of contract claims, Plaintiff alleges a litany of other claims regarding the conveyances of the Marion home and farmland -- conversion, recission, outrage, fraud, constructive fraud, promissory and equitable estoppel, breach of trust, breach of fiduciary relationship, undue influence, duress, interference with business expectancy and economic relationship.[15] Plaintiff has failed to provide evidence to support any of these cause of action, so they are dismissed.

For example, even if Plaintiff's factual allegations regarding the 2008 conveyances are accepted as true, her many causes of action that attempt to void the 2008 conveyances are without merit. In a similar case where a wife argued that she was under duress from her husband when conveying land, the United States Supreme Court held that the wife was required to "disaffirm her conveyance" once the duress ceased.[16] At the latest, this would have been when her spouse died in December 2010, since he, allegedly, forced her to convey the property. Plaintiff did not file suit until August 2013.

Additionally, neither the allegations nor testimony establishes behavior that would support claims for outrage, fraud, or constructive fraud.

---

[15]Doc. No. 22.

[16]*Barnette v. Wells Fargo Nevada Nat. Bank of San Francisco*, 270 U.S. 438 (1926) ("If there was duress here, appellant, as soon as she was relieved from its operation, was in a position either to disaffirm her conveyance or to allow it to stand undisturbed as the free and formal disposition of her rights. If her choice was to disaffirm, it might have been evidenced by suit timely brought or by any other action disclosing her purpose to those who would be affected . . . [a]n election to disaffirm . . . must be exercised promptly.").

## CONCLUSION

Based on the findings of fact and conclusions of law above, Plaintiff's Motion for Partial Summary Judgment (Doc. No. 24) is DENIED and Defendants' Motion for Summary Judgment (Doc. No. 28) is GRANTED in PART and DENIED in PART. Defendants' Motion to Amend Answer (Doc .No. 42) is DENIED.

There was an abundance of extraneous information in both the briefing and depositions. Both parties are directed to streamline their cases before trial, so that only the essentials relevant to the remaining claims are presented to the jury. This is to both save time and avoid confusion of the issues. It seems to me that this trial should take no more than a day and a half.

Additionally, I have a conflict with the current trial setting for this case. I intend to move trial up a week to Tuesday, July 15, 2014. If either party objects, please submit your objection by 5 p.m., Wednesday, July 2, 2014.

IT IS SO ORDERED this 27th day of June, 2014.

/s/ Billy Roy Wilson
UNITED STATES DISTRICT JUDGE